Good morning. My name is Terry Ryan. I'm the attorney representing the defendant in this case. The case arises out of an arson that was investigated by federal law enforcement authorities and involved a church known as the Cebud Pacific Northwest Church. The defendant, Robin Lamont, through counsel stipulated to a series of facts in this case and then entered a plea of guilty to the charge contained, I believe, in count one, under 18 United States Code 844, small i, arson of a building used in interstate commerce. But he reserved the right to appeal to this court the issue of whether or not this arson and this church fell under the ambit of the wording of this statute. In other words, was this church a is used in commerce or conducted an activity affecting interstate commerce or foreign commerce. May I just ask you one question that doesn't have anything to do with the merits, but I'm curious. Is your client finished serving his prison sentence? He is. He's having some various matters now involving the federal court and his supervised release. Second, was there a bail motion made to our court? At the time of the appeal? Yes, or at any time. After the conviction, was there any motion made for bail in our court? I don't believe there was. I received this case later on, and there was another attorney that was the trial court attorney. And the last brief by the government, if you can call it that, was filed on June 5th of 2002. And was there any effort made to get an expedited hearing in this case? No. It's not very satisfactory from the standpoint of a legal system to be asked to say that somebody should not have been convicted and find out that he's already finished serving the sentence. It doesn't make the system look very good. It's certainly not the way it ought to operate. I'm sorry. I didn't hear the last part. He said it's certainly not the way the legal system ought to operate to decide whether people should be convicted after they've already served their terms. Well, the trial court denied the motion, Your Honor. Well, I'm glad it's only the trial court we have to blame for that. But it seems to me that there ought to be some effort to see on both sides, including the party, to see that cases that should be expedited are expedited. Yes. When I received the case, I was appointed originally, Your Honor, to represent Mr. Lamont on the appeal, and he was already out. And then I had been representing him on various motions Well, I was not criticizing you. I'm just trying to find out what we can do. We did try to have a system originally, I know, several years ago that when it was a short sentence to see that those cases got heard immediately. I do a lot of work in the state of Washington Court of Appeals system, and they do have a system for expedited appeals, and it works fairly well. I've never been involved in a case that I felt needed to be Well, I think Jones kind of sets the parameters, and then you've got the other cases which were referred to both counsel last week that take little potshots at the way the system used to work and the way the courts used to rule. Jones says that the statute covers activities or buildings used in interstate commerce and says that the building must have been employed for commerce and not merely a passive passing or past connection. So that kind of sets the tone, and then all the cases that the court cited last week, the follow Jones, take that and run with it. One of the cases, U.S. versus, I believe it's pronounced Ree or Ray, R-E-A, says that it must not only be commerce but must be interstate commerce, and the reason I mention that is because you read the Jones opinion, and it quotes from other cases, but in the text that the court is writing, it doesn't really use the two words interstate commerce. It just talks about commerce. No, that's not quite correct. The Jones case says the proper inquiry, we agree, is into the function of the building itself and then a determination of whether that function affects interstate commerce. I believe that's – is that a quote, Your Honor? It's a quote, yeah. But the text, the opinion – But the introduction to the quote, the proper inquiry, we agree, and then they have a quote that says it's whether the function of the building affects interstate commerce. Yes. And in looking at the cases that the court has cited and comparing those to the case at issue here, I believe that the cases would tend to indicate to this Court that this matter should be reversed and remanded. I don't know what the court would intend to do in that situation to allow the prosecution perhaps to present more evidence, but this – Well, wasn't it stipulated at trial to put the connection – the degree of the connection to interstate commerce? Those were stipulated, Your Honor. So what are we remanding for if we just take the stipulation? Well, that would be my argument. I'm just thinking – Well, why don't you make yours? Don't make the government's. All right. You might need a little help, but you don't need to provide it. Okay. The stipulation was that this church served members in five states, receives natural gas. I think one of the cases said natural gas was just a passive activity. Is insured out of state. One of the cases said that's not active interstate commerce. Purchases goods out of state. But one of those cases, I think, was the Supreme Court of the United States, which the government didn't bother to mention, dealt specifically with the insurance issue. The language that is critical to me out of Jones, in addition to the language that Judge Reinhart just read, where the court says, referring to the verb used, that – and I'm just reading from the Supreme Court – that qualification is most sensibly read to mean active employment for commercial purposes, not merely passive passing or past connections. That strikes me as, on the facts of your case, you win. And the government has to respond to that for me. I agree. Thank you. I have nothing further. Thank you. Good morning. May I please the court and counsel? My name is Stephanie Lister. I'm an assistant U.S. attorney for the Eastern District of Washington. The court has asked, in its recent order, that we address several cases that were decided since the government's brief was filed. And that's what I will do. Well, the United States v. Jones is not filed after the government's brief was filed. And it was discussed in your opponent's brief. And you just ignored it. And it's the leading case in the area. And it specifically discloses some of your arguments. How could you not have cited the United States v. Jones when it was called to your attention? I think the Jones case, the Supreme Court case of Jones, is consistent with the Ninth Circuit's ruling in Papadopoulos. Well, that may be, but there is a United States Supreme Court, which some people think is more important than the Ninth Circuit. And that's where the law comes from. And your brief doesn't mention the leading Supreme Court case that discusses some of the issues you discuss. How could you not discuss Jones? Your point's taken, Your Honor. It should have been discussed in the government's brief. And then you did cite cases that have been reversed since before you cited them. You cited cases in the Eighth Circuit. You cited the original version. Then, after Jones, they were reversed by the Eighth Circuit. And you didn't mention that either. You represented that they were the law that existed. I think the law that exists now is the Jones case, clearly. And while it's consistent with the Ninth Circuit's holding, the test has been made very clear in the Jones case. What I would like to discuss is how this case fits the test case of Jones. Obviously, the first inquiry in the Jones case is what the function of the building is. It's uncontested that this building was church. The second test from Jones is, is the function of the building involved in commerce? And the government's contention here is... If I can, now, this is a gloss. I'm not now reading from the statute, but I'm reading from the Supreme Court. The Supreme Court's gloss on the statute requires that there be, quote, active employment for commercial purposes. That's how the building must be used. Yes, Your Honor. And I think that as I've read these cases, it breaks it down really into three areas. The function, whether or not the function affects interstate commerce, and then it has to be an active use of that building that affects interstate commerce. I guess I just want to make it clear with respect to the second prong, what's the function? I think the function is a religious function, but I think that the function also includes the aspect of providing services to members of the community, whether they be spiritual or community or educational, those kinds of things. That in fulfilling those services to the community, the church receives and solicits donations and then buys goods and services in order to provide those services. That's a commercial purpose. Is that what the church is engaged in? Is it a commercial activity of raising funds? The church's primary activity is spiritual. But in relationship to that primary activity, and the Court has said that you don't have to look just at the primary activity, you can also look at its activities in terms of providing services to members. Well, I wonder whether, for instance, we should consider any speech by ministers, commercial speech, rather than the ordinary speech that's protected fully by the First Amendment. Are ministers engaged in commercial activities? What we're talking about here is not speech. We're talking about... No, I'm asking, though, if what the churches are doing is engaged in commercial purposes because they raise money from their parishioners, whether then, for instance, Pat Robertson and all these people we see on television should be judged by the cases that apply to commercial speech rather than ordinary political or religious speech. I think the churches fall in a gray area. I don't think they're commercial areas like apartments or restaurants, nor are they non-commercial like private-owned residences. My feeling is that, at some point, fundraising by a church could satisfy the Commerce Clause, if it was extensive enough. Like if a church broadcast in a multi-state area with a radio or TV that was within the church, you know, they had their broadcasting equipment built into the church, that the language that Judge Fletcher mentioned might be an issue, but I would feel the Court might say there's a Commerce Clause connection, even though it's not commercial in the sense that Judge Reinhart maybe is suggesting it's religious fundraising. But it might be enough. But clearly the Supreme Court is saying the use of the church has to be what's affecting interstate commerce. So what in this church, what use of the church has any effect on interstate commerce, even assuming that fundraising could satisfy commerce? In this case, it was stipulated during the change of plea that the church had membership from out-of-state individuals, Alaska, Idaho, Oregon, Montana. It was also stipulated that these people, being out-of-state members, did provide donations to the church. I think we can infer they travel interstate to the church. But the church isn't traveling to them in commerce. They're traveling to the church. They're going to it in a locality. But the church is providing a service to these people. It is a spiritual service. And these members have to travel through interstate commerce in order to benefit from the service. Let me ask you this, which is not so much the travel, but it's the commercial. I think, and I'm trying to follow along with Judge Gould's point, I think your position is going to lead me to the point that, if I agree with you, any church that gets donations from its members is engaged in commercial activity within the meaning of the statute. Is that right? I'm not asking the court to make it that broad. I think we have to look at the nature of the donations. How do we limit it then? Well, I think the case that was cited by the court in the Autumn case, where it was minimal connections. They only had a handful of publications. They only had two donations from out of state. One was the pastor's brother-in-law and sister-in-law. That's very minimal. It doesn't say that the commercial purposes themselves have to be interstate. It says commercial purposes. And from that, we can then infer interstate connections. We ordinarily do with anything commercial in the Commerce Clause. It's to say, you don't have to show a connection with the Commerce Clause to the fact that your particular client came from out of state, so long as it is commercial. I don't see here, the Supreme Court says, that a church that's down the state line, Spokane may be close enough. You've got some people coming in from Idaho. I don't know. Alaska, I guess they're mailing it in. Is going to be protected by the statute, but a church in Yakima that's a local is not? Is that the problem? Whether they've got interstate membership? Well, I think we can't look just at donations. We have to look at membership and whether or not they travel, actually, to perform or to participate in services. In this case, there's also publications that they send out to out of state. Did they publish? Did they have a printing press in the church? Did they create or mimeograph? Did they create the publications within the church, or did they just buy them from somebody? We don't know that. We also don't know if there was an office in the church or if they paid salaries out of that. You know, the Jones case talks about an office, which means that in this case, we may want to do what the Court did in Johnson and remand the case back for better determination of the facts. Well, whose burden of proof is it? Pardon me? Whose burden of proof is it to show that you're within the statute? The government's. And why do you deserve another cutout? I mean, you've had your trial. Actually, we had a stipulation on a change of plea, and that was in the time when the Gomez case was leading in the Ninth Circuit, and the government was able to argue that the aggregate effects of these different activities would satisfy the interstate commerce requirement. Thus, I think we talked about how natural gas, mortgage insurance, all those things have been rejected by the Jones case now. And also the aggregate things about the out-of-state membership, the traveling, the donations, et cetera. All those things combined, I think, when we brought this before the district court judge, were sufficient to meet the jurisdictional test. This is a difficult issue in the circuits, and so now the law has evolved, and we should have an opportunity to reexamine some of these facts. I think it's clear that the Jones case says this is an individual case by case determination that has to apply to each case. So the facts are critical in a determination. For instance, in the Jones case, the court says this is not a home office situation, this is not an indication that there was a location of commercial activity. You have to look at the specific facts of the case. And I think the government should have an opportunity to further develop those facts of the case in light of the Supreme Court case of Jones and in light of other circuit decisions. I think this case is distinguished from the Annex situation because I think in the Annex case, there was an annex that was used for Sunday school services and board meetings, but there was no proof of interstate travel. I think we have interstate travel here. We have other activities going on. I think that the Terry case is very significant in that while the majority opinion said religious primarily, that function is not a loan enough to justify interstate, the concurring opinion says a religious purpose is a sufficient nexus. And so following that analysis, the government would be correct in putting forth that this church should be covered by the federal arson statute. You know, you filed a brief in June of 2002. You didn't ask for a remand. You didn't say there was any change in the law that required additional facts. All you asked for was an affirmance. It was two years after the Jones case that you did that. Your Honor, I don't think the Jones case changed the law with respect to whether or not you aggregate. I think Lopez still indicates that you aggregated. Okay. Well, if the law hasn't changed then you had your shot at it. I mean, I assume you gave all the facts that were relevant under the law. And if the law is the same, why should you have a second chance? I think the Jones case makes it very clear that it's fact specific because of the language used in the Jones case. And I think that since the aggregate no longer applies on the Ninth Circuit, we should have an opportunity to further develop those facts. So suppose instead of two years, you'd given this man five years. Then you get to your first two years and you come and you say, well, all right, we lost on the facts we gave you the first time. Now we serve two years. Now let's send it back and let him serve another two years while we think up another theory. Well, Your Honor, other circuits have held that the church, for instance, the concurrent opinion in Terry said that it meets the federal firearms, federal arson statute. I don't think it's an attenuable position for the government to make that argument. What's the Sixth Circuit case? Isn't there a Sixth Circuit case saying that a church is in commerce? The Sixth Circuit case is the Rayburn case and it says that, yes, a church, because of the broadcasting nature, et cetera, it meets the interstate nexus requirements and then falls under the federal arson statute. Where it conducted radio, had a radio station in the church, right? Well, they used verbal message versus this church used publications to spread its messages to other states and internationally. But the building was used for the purposes of a radio station. Well, this building was used to mail out things. We don't know if they actually manufactured those things within the church, the publications and the brochures. You don't know, so you're asking us for... You have no idea what we're going to find out if we remand? Absolutely. And I also think we don't know if there's a daycare, which is very important because the Court in Terry said, hey, if there's a daycare, that's dispositive. It's commercial. Even though the daycare was for non-profit and there were nobody traveling from other states to the daycare. So even though the law didn't change and you had your chance to establish the facts, once you try and you lose and you fail, then you ought to go back and see if you can find something else. It would be nice if we ran trials that way, too. Well, Your Honor, sometimes the law is not clear and I think that Terry... You say the law is not clear. Okay. Thank you. Thank you, Your Honor. Thank you very much. All right. As the Court was asking questions of the government, there was some discussion about travel and if you read the stipulation, there's nothing in the stipulation that says anybody was doing any traveling. I just wanted to point that out to the Court. It says... Well, how would people who lived in other states attend the church if they didn't travel? I don't know. I wasn't there at the time of the... Do you have any idea how you do it without... It says it serves members in Montana, Idaho, Oregon, and Alaska. It doesn't say they travel to the church. It says it serves them. It seems like a pretty reasonable inference if it serves them that they... It says several of the members are from out of state to be a member of a church and not attend. So I just wanted to point that out to the Court. There's nothing in there that says anything about anybody traveling. There's nothing in the record, but it seems to me annoying how churches work. Somebody might have moved away, maintained their membership, they send in their Christmas offering. That's not on the record, though. Thank you. All right. Thank you, Case. This argument will be submitted. Second case of the morning is United States v. Arteaga.
judges: Reinhardt, W Fletcher, Gould